Good morning. May it please the Court, Henry Cruz for the petitioner, Mr. Alvarez. I'll reserve five minutes for rebuttal. Mr. Alvarez has appealed the agency's denial of his applications for withholding of removal and relief under the Convention Against Torture. Regarding his withholding of removal application, while the BIA presumed that Mr. Alvarez was a member of his proposed particular social groups, including male family members of his grandfather, which is the one that we are focusing on in our arguments, it found insufficient nexus between his feared persecution and his particular social groups. Well, counsel, correct me if I'm wrong, but neither in connection with the killing of his grandfather, which occurred like 15 years before, or the killing of his, I guess they were cousins? Yes, Your Honor. Nobody knows why. He didn't know why his grandfather was killed. He doesn't know who killed his grandfather. He doesn't know why his cousins were killed. Nobody said anything. When those anonymous notes were left at the door, nobody said, we're going to kill you because you're the grandson of so-and-so. They just don't know. So as sad as these events are, doesn't your client bear the burden to show why they were killed and to tie them into this social group? I don't see the connection. Well, Your Honor, in terms of why his grandfather was killed, why the cousins were killed, I don't think that we really need to establish that, because in this case the death threats specifically mentioned the grandfather, specifically said that they knew that he was the grandson of this individual, and specifically said that they would kill him like they killed the grandfather. But they didn't say why. Correct, Your Honor. You have the burden to show if you're going to be part of a social group, you have to show in what way you are. And there's nothing to tie whatever reason was given for the killing of the grandfather or the cousins or the threat to your client. You have that burden, do you not? Yes, Your Honor. And I think we're relying on circumstantial evidence, because most cases they're not going to specifically state why they are persecuting the individual. I think Ninth Circuit case law establishes that the individual doesn't necessarily have the burden to have the individual, the persecutor, specifically state in every case why they're killing him. So in the circumstantial evidence in this case, Your Honor. What case are you citing for that? Your Honor, well, there's Mordeguia and Badassarian, Garcia, Martinez. And what do those stand for according to your perception? That the individual, that the asylum applicant, or in this case withholding applicant, can rely on circumstantial evidence and that they don't necessarily need to provide direct evidence of what the persecutors, that the persecutor specifically said, this is why we want to kill you. In this case, there was no other reason for these individuals to threaten my client. Now, the killing of the grandfather occurred when? 1993. Now, he was there from 2001 to 2005. Correct, Your Honor. In the same town, and apparently nothing happened to him. Why do you suspect that something may happen to him this time when he was there for four or five years without any incident? Well, I believe when he was there from 2001 to 2005, he was actually in another town. He was in the town in Jalisco. But when he was threatened, he was saying that this. When he moved back to Jalisco? Well, Your Honor, that's something that the agency has not determined. There has been no ruling on whether he could reasonably relocate. So I don't think that this court can make that decision in the first instance. Counsel, the law doesn't say that as long as he can go anywhere in Mexico, it's not required that he go back to the town. Do you have a case that supports your position that he has to go back to his town and be safe? Because I'm not sure the law supports you on that. No, Your Honor. We're not arguing that he has to go back to his town. I mean, the law definitely does not say that. What I was referring to with Judge Rubino is that the agency hasn't made a determination of what you're referring to, in this case, the reasonable relocation issue. They didn't determine whether he could reasonably relocate to another part of Mexico, outside of the town where he was threatened. And so I think that's something that the agency should be left to decide in the first instance. They basically determined, in this case, their reasonings for why there wasn't a clear probability was because the grandmother would continue to be safe before her death in 2010. However, the grandmother is not a member of the particular social group that he has raised in this case, which is male relatives of the grandfather. So the continued safety of the grandmother while she was alive doesn't necessarily undermine his claim. Counsel, let's change the subject a little bit. Does your client claim he suffered past persecution? No, Your Honor. Well, I believe they made that claim before the agency, but we have not made that. Oh, you've abandoned that claim. Correct, Your Honor. So you're relying totally on a fear of future persecution. Correct, Your Honor. And you base that on the family connection per your discussion. Yes. So if I could just discuss a little bit further the evidence here. Nothing else was provided. Nothing else was stated. There was no other reason given for why these individuals wanted to harm my client. As he testified himself, he had himself no enemies in Mexico. He had done nothing to make any enemies in Mexico. He didn't upset anyone. No one asked him. You know, in these cases, typically someone asks the person to work for them and they refuse to work for them for a drug cartel or they ask for money for ransom. This is not what happened in this case. All these individuals specifically said, hey, we know who your grandfather is. We know that you are his grandson, and we will kill you like we killed your grandfather. I think that in this case, I do want to get to Barajas-Romero because it is important to point out that in this case, the BIA applied the one central reason test to the nexus question. But even if you apply Barajas-Romero, does it really change the results here? You haven't established any reason that it was, not just a central reason, but any reason. Well, I don't think that the board found that there wasn't any reason. I think the board found that. I understand that because Barajas-Romero hadn't been decided, but I'm just saying if you take that and you take the allegations contained in the record, I find nothing in there that indicates a reason for your clients being harmed based on a family relationship. Yes, he had the tragedy of his grandfather's death. Yes, he had the tragedy of his cousin's death. But we don't know why. He doesn't say. You say that circumstantial evidence alone is sufficient to prove it, but circumstantial evidence proves what? Well, as I was saying, that they didn't mention anything else but his relationship to his grandfather. So there must be at least – there is at least some evidence indicating that they only targeted him because of his relationship with his grandfather. Why else would they mention the grandfather and nothing else? Why else would they mention how they killed the grandfather and telling him that he must leave or they will kill him like they killed his grandfather? Is that your best argument? Well, Your Honor, I mean, I think that's the most – that's the strongest evidence that we have where the individuals have stated their reason for killing him. I mean, I do want to also point out the – Can I ask you, though, because another area that I wanted to inquire about is – because the IJ also found that Mr. Alvarez asserted a particular social group, and that's male family members of his grandfather, and that that was not cognizable discrete class of persons that can be identifiable by perception. What's your response to that? What's your best case to counter that? Well, Your Honor, in this case, the board assumed that he – that it was a cognizable social group. In its decision, it stated that even assuming that all three of his proposed groups were cognizable, they denied it on the grounds of nexus. So that issue wasn't decided by the BIA, and so that's not before this court. In what way is it, though? I'm sorry? In what way is it cognizable? Well, this court – I mean, Your Honor, the issue wasn't raised, so we haven't briefed it, but I would just say – I'm sorry, Your Honor. It just sounds like you want it to go back. I'm just saying you're going to confront that if you go back, and I'm just trying to figure out what your best case is. Well, Your Honor, the – I mean, like I said, we haven't briefed the issue because it wasn't before, but just off the top of my head, I know that this court has repeatedly said that family – family is a particular social group. It's perhaps the strongest one because of the innate family connections, and that the BIA recently ruled in a case as well, a matter of LEA, expounded on how family can be a particular social group. And so that's the cases that we would rely on if this were remanded and the issue were brought up again. I do also want to point out, though, in terms of the next issue that, again, while we don't know exactly why these relatives were killed, I just want to point out that we have seven family members killed within a 13-year period of time. That's an average of less than two years between a killing. It's terrible and tragic, but they weren't all killed in the small town. When I first picked up the briefing, I thought they were all killed within that small town. They were killed throughout Jalisco, Michoacan, the EFE. So they were relatives within a pretty wide range – region of Mexico or central Mexico. Correct, Your Honor. And so it's not really clear how the connection kind of, I think, undermines your case because it's not really clear how the people knew that those individuals were the grandsons of sheriff, of the sheriff in the small town. So I'm not sure how that strengthens your nexus argument. Well, I just point to the case of Mgoya where that individual also had several relatives either killed or run out of the country, and yet there wasn't any evidence exactly at the time of those incidents why those people were being persecuted as well, but the court went on to rule because of all those family members being attacked. In addition to the country conditions evidence of the individuals in that situation being attacked, they said that there was enough nexus in that case. So I would just rely on that case, too. I would like to reserve the rest of my time for rebuttal if there aren't any more questions. Thank you. We'll hear from the government. Good morning, counsel. Good morning, Your Honors. May it please the Court, my name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. As this case involves the reinstatement of one of Petitioner's prior orders of removal, and because he's waived the Board's past persecution finding, the only issues before this Court are whether the Petitioner met his burden for withholding of removal and cap protection, and I will address each of those issues in turn. First, with regard to withholding of removal, the Petitioner has narrowed his particular social group claim throughout these proceedings to the one he's advancing now, which is male family members of his grandfather. But to prove this, the Petitioner has to show some evidence that he was targeted because of that family relationship, and the evidence here is insufficient. The mere fact that there is that particular social group of family and that members of a family have been harmed is insufficient to show a nexus. Counsel, your opposition suggests that circumstantial evidence, per se, can fill in the blanks there. What's your response to that? Circumstantial evidence in some cases can fill in the blanks, but here all we have is the threat, and it's anonymous, it was unaddressed, and all that really establishes is that the would-be persecutor, we don't know who wrote it, the would-be persecutor only knows of the family relationship and makes a threat of harm. It still doesn't establish a motive. The fact that there's more than one threat, does that matter? It might have if some of the other notes said maybe something different, but based on the testimony it seems like all the notes just simply mentioned the grandfather and mentioned a threat of harm. It doesn't give any other indication as to motive as to why. And again, we don't know who, and even in terms of that piece of evidence connecting everything else together, everything's just too tenuous. The timing of events, the locality of events, just this piece of evidence in and of itself is insufficient, and even taken together, it's just not enough to meet the burden of showing a nexus to his family status. Did the IJ credit his story about the notes? The IJ did find some issues with consistencies in his testimony but took that for the weight of the evidence, but did credit his testimony as credible, and the board took it as credible. But even taking that testimony as credible, it still is speculation. His subjective belief as to why or who doesn't show actual motive. There needs to be something in addition, and all he's pointing to is this threat, and this threat is insufficient to show motive. And it is his burden, is it not? It is his burden to show motive. And we really just, there's no motive here. We don't know anything. We don't know who killed the grandfather, who killed the cousins, who wrote the notes. We don't know why. And petitioners throughout testimony opines that it's narco-traffickers, but it's just his mere speculation, and his opinions throughout are also shifting. At one point he says narco-traffickers. At another point he says maybe it was a grandson of somebody else. It's just that does not show, especially given the timing of events, where the grandfather was killed in 1993. And I'd even point out, too, that some of the cousins were killed prior to the time the grandfather was killed, and that was the span over about 15 years, the last death being in 1999, and the threats to petitioner were in 2007. That's just the timing and locality of all these events is just tenuous at best to show a motive. You mentioned that some of the cousins were killed before the grandfather was killed. How many were killed before the grandfather was killed? I believe it was two or three prior to the grandfather. Three out of, okay. So petitioner in his brief paints it as this systematic extermination of family members, and that's just really not, looking at the facts, that's really not what happened. And, again, this is a basically there's no evidence of motive here. He cited a case in response to the region not being significant. Do you have cases that say otherwise? Nothing off the top of my head, but perhaps if all these were in the same town it would lend more credence to his speculation, but because all these events took place in different areas, as you mentioned, Jalisco, some family members were killed in Mexico City, that locality just undermines his claim that these individuals were actually targeted because of their family status. I think he makes reference to the country reports. What role, if any, should those play in terms of the government's acquiescence in the killing? The country reports do play a role, although they're not determinative here. They do show that there is lawlessness. I mean, that also shows, stepping aside from the cat issue real quickly to the motive issue, the country conditions evidence just substantiates the fact that there's no motive here, and given the length of time over which these family members were killed, it just shows that there is a lot of violence in Mexico, unfortunately, and a lot of the crime goes unpunished, unfortunately, and those country conditions reports substantiate the fact that there's no nexus, that these people were killed because, unfortunately, Mexico is a violent country. So a CAT claim has to connect the violence to narco-trafficking, or to be targeted by the CETAs or some similar group. You cannot be just a victim of random violence. Correct. You have to show that for what you have something that you will be singled out for persecution, and here he's claiming family membership, and the country conditions doesn't show that members of his family are targeted for persecution. The persecution can be either by an official group or it can be by a private group, such as one of the gangs. That's correct. But here we don't know who the would-be persecutor is. The speculation is maybe it's narco-traffickers, but in reality we don't know who it is. So we don't know if it's a government actor. It would be unlikely, though, that a narco-trafficker would sign his name or her name to a note, though. That's correct. Okay. So I think you have to take the note. By the way, we don't have the notes, and many years have passed. So I don't think we can read that literally, you know, to whom it may concern, and with a name you have to get the sense of what was conveyed there. So wouldn't that be enough, then, in terms of the circumstances and the backdrop involved here? In terms of showing motive or in terms of showing the government? Showing identity. I don't think so. I mean, it could be a neighbor. It could be we don't know who it is, and I'd rather not speculate because it's the petitioner's burden to show potentially who it is and why it was written. If we didn't have an identity, we would be able to perhaps discern more maybe why this person wrote the note, but we just simply have no evidence of who it was or why it was written. In terms of the country conditions evidence issue and the cat claim, the petitioner points to the fact that he went to the authorities, whipped the note, but the authorities' simple fact of their inability to bring these anonymous note writers to justice is insufficient to show that they wouldn't protect him from torture in the future. That would be true in any country, would it not? If you brought an anonymous note, where do they go? Who do they look for? Correct, and then if it were otherwise, then anyone with an anonymous letter or something to the effect where they don't know who the perpetrator is could have a potential cat claim, and cat just doesn't reach that far. What's your position on Barajas, Romero? That under either the A central reason test, remand for Barajas is futile because the outcome would be the same under either standard, and I would also distinguish that in terms of that that was a mixed motive case, and here this is really I would say a no motive case. So remand for an analysis of Barajas I think would be futile. Yeah, the outcome wouldn't change under either standard. If there's no further questions, I might just sum up. Okay. I don't think so. Thank you very much. Counsel, go ahead and sum up. Yep. The government acknowledges and is sympathetic to the fact that Petitioner's grandfather was killed and cousins were killed, but the record simply does not compel the conclusion that Petitioner faces a clear probability of persecution because he is the grandson of his grandfather or that he faces a clear probability of torture upon return to Mexico. Thank you, Your Honors. Thank you. Counsel, I think you have some rebuttal time. Thank you. I would like to point out a couple of cases in terms of the motive issue. In this case, in the court's decision in Madrigal, the situation was there was, again, no reason this was an individual who was targeted by a drug cartel in Mexico, and there was no reason given for the attacks, but there was an explanation provided and circumstantial evidence had supported the individual's explanation. The problem here is that we don't know who is targeting the individual. But in that case, they didn't know for sure as well, and so it was remanded for them to decide whether the evidence supported the Petitioner's claim. On this evidence, the IJ determined that he was targeted by anybody. Well, we know that he was. It would be a futile remand, would it? Well, we don't necessarily need to identify the specific individuals who threatened them. All we need to demonstrate is that there is someone who does want to harm him and why. But did you have that opportunity already? Yes, and we're not arguing that we need to have another opportunity. We're arguing that the evidence shows that, at the very least, what we do know is that the people who killed the grandfather threatened my client. They specifically said— We don't know that. No, we do know that, Your Honor, because they said, like we killed your grandfather. Not what I understand the note said, but in any event— Well, this is what the— There's no— Well, who killed the grandfather? I guess we don't know that. No, you're right. We do not know who killed the grandfather. But, again, we do not need to establish that in order to demonstrate a risk of harm. Well, you do if you want to show a family group. If your claim is that the social group involved is the family and that the reason your client is targeted is because of the family, you do need to show that it's the reason these people were being killed is because they were members of the family, and you have not shown that. Well, we just need to show why he was targeted, why the grandfather was killed, why the cousin occurred necessarily isn't really that important as why these individuals want to kill my client. And so, you know, again— To me, it's circular. I mean, you say that it's because he's his grandfather's son that he's being targeted, but the reality is if you're going to show that it's because of the family, you have to show that these people were killed because they were members of the family, and you've not made that showing. So, in any event, we don't see the case the same way in Madrigal. It had to do with willful blindness to a third party, known third party's activities. So it's very different than what you're portraying here, I believe. Your Honor, and in terms of the Catt claim, you know, the agency basically said that all my client submitted was evidence of general and random violence. But we cannot conclude that the evidence definitely does not support the conclusion that he was just the victim of random violence. This was not a random act of targeting of him, especially specifically mentioning his grandfather, and the ways that the family members were killed, execution style. These were individuals who were targeted for specifically being killed. These weren't acts of random violence. There weren't any robberies involved in any of these killings. Again, they weren't motivated by money. So the agency's conclusion that all we had was evidence of random violence simply cannot be supported by substantial evidence. But he lived there for four years without any violent act being attempted on him. The prior time, yes. This recent time, he was only there for a month in his grandmother's home, where she relocated, and that's when he was threatened, and he left about a month later. Thank you, Your Honors. Thank you very much. Thank you both, counsel, for your argument in this case. The case just argued is submitted.
judges: M. Smith, Murguia, Robreno